C. EDWARD PICHLER, Respondent, *v.* BENJAMIN GUINNESS and Others, as Trustees, etc., of ERNST THALMANN, Deceased, and Others, Appellants.

First Department, July 6, 1926.

Banks and banking — foreign exchange — action to recover back money paid to defendants under agreement made in December, 1916, whereby defendants agreed to transmit by wireless telegraph to Germany to credit of named estate — defendants transmitted by wireless but wireless company made mistake in name of estate to which money was to be credited — error was not discovered until 1919 — contract exempted liability for delays or mistakes beyond defendants' control — plaintiff cannot recover.

In December, 1916, the defendants agreed to transmit to Germany, for the credit of a named estate, money paid to them by the plaintiff, under an agreement which exempted the defendants from liability for any loss or damage in consequence of any delay or mistake in transmitting the message, or for any other cause beyond their control. The defendants, in accordance with the contract, transmitted by wireless the amount paid, but the wireless company made a mistake in the name of the estate to which the money was to be credited and the money was not credited to that estate. The error was not discovered until 1919, owing to the war.

The defendants are not liable to the plaintiff for the amount paid to them in 1916, for there was no breach of their contract to transmit the money, and they are not liable for the mistake of the wireless telegraph company, inasmuch as the contract specifically exempted them from that liability.

APPEAL by the defendants, Benjamin Guinness and others, as trustees, etc., and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day of November, 1925, upon the verdict of a jury rendered by direction of the court pursuant to a stipulation that the case be tried before the court without a jury and that the verdict be directed with the same force and effect as though a jury were present.

*Arthur B. Brenner* of counsel [*Edwin Kessler, Jr.,* with him on the brief; *Van Vorst, Siegel & Smith,* attorneys], for the appellants.

*William L. Woodward* of counsel [*Parmly, Stetson & Woodward,* attorneys], for the respondent.

DOWLING, J.   The complaint herein alleges that on or about December 16, 1916, the defendants agreed with the plaintiff to procure the payment by wireless telegraph of 20,000 marks, German currency, to the Frankfurter Bank for the account and to the credit of the Pichler estate, referred to in the agreement as " Pichler Nachlass; " that the plaintiff on that date paid the sum of $3,559.01 to the defendants in compliance with the terms of the agreement; that the defendants failed and neglected to carry out their contract and to procure the payment as agreed at any time prior to the 19th day of September, 1919, when plaintiff demanded the return of his money.

The answer denies the allegations of the complaint, except that the defendants admit the receipt of $3,559.01 from the plaintiff on or about December 18, 1916, which sum was paid by the plaintiff in respect of an order for a wireless transfer which is set forth in full in the answer and which specifically exempts the defendants and their correspondents from liability " for any loss or damage in consequence of any delay or mistake in transmitting this message or for any other cause beyond their control."   The answer further alleges that the defendants duly sent a proper wireless message for the purpose of effecting the transfer, but that the message was received in a mutilated condition; that due to a mistake in transmitting the message, beyond the control of the defendants, the word " Wechsler " had been substituted for the word " Pichler," and that the disturbance of the mails, resulting from the European war, prevented the correction of the mistake until after the plaintiff's demand for the return of his money.

At the opening of the trial defendants' counsel asked leave to amend the answer so as to state further: " That after the time covered in our answer and before the commencement of our action the plaintiff and the intended beneficiary exercised some dominion over the account and gave certain directions with respect to it." Defendants offered evidence of such assumption of dominion on the part of the plaintiff and the intended beneficiary, and a motion to conform the pleadings to the proof with respect to this was granted at the close of the trial.

The facts established upon the trial are as follows: On December 18, 1916, at 25 Broad street, New York city, the plaintiff and the defendants executed and exchanged an order for a wireless transfer and a receipted bill for the price thereof, as follows:

[Order]       " Ladenburg, Thalmann & Co.,
           " 25 Broad Street,
    " by Wireless          New York, *Dec.* 18/1916.
" Transfer by ~~Cable~~ to Frankfurter Bank,
           " Frankfurtmain
" On account of Pichler Nachlass
     "Amount M 20,000
     " Rate 71              $3550
     " Cost of Message        9.01
" Through:
     " Deutsche Bk    In ordering this Cable Transfer it is fully
     " Berlin          understood and agreed by the purchaser that no
                  liability shall attach to Messrs. Ladenburg,
Thalmann & Co. nor to their correspondents for any loss or
damage in consequence of any delay or mistake in transmitting
this message or for any other cause beyond their control.
               " Purchaser
                  " C. EDWARD PICHLER "

[Receipt]            " 25 Broad Street
            " New York, *Dec.* 18, 1916.
" Cable Transfers are to be paid for on the day they are ordered.
" In making this Cable Transfer it is fully understood and agreed
   by the purchaser that no liability shall attach to us nor to our
   correspondents for any loss or damage in consequence of any
   delay or mistake in transmitting this message or for any other
   cause beyond our control.
" Mr. C. Edward Pichler,
       To Ladenburg, Thalmann & Co., Dr.

---

      " Wireless
" M20,000 ~~Cable~~ transfer to Frankfurter Bank, Frankfurt a.M.
       " a/c Pichler Nachlass
       " @ 71                 $3550.
            " Cost of cable        9.01
                     $3,559.01
" Through:
     " Deutsche Bank,
       " Berlin.     " Received payment
                " Dec. 18 1916
           " LADENBURG, THALMANN & CO."

In compliance with the contract between plaintiff and defendants,
the latter on December 18, 1916, sent the following wireless message
to the Deutsche Bank at Berlin:

" Cablegram

" No. 22 Time° CO    Check 26   Via              191
" Send the following cablegram ' via commercial ' subject to the
  terms and conditions printed on the back hereof which are
  agreed to
                                         " Dec 18, 1916
                " Radio via Tuckerton
" deutschbank   berlin
  december eighteenth twooneeight
  pay frankfurterbank frankfurtmain twentythousand marks
  account pichler nachlass pay elise H. Lampe Freidrich Schneider
  Strasse fourteen dessauanhalt fifteenhundred ninetythree marks
                                         " LADENBURG
" 1248 PDG "

On December 29, 1916, a similar agreement between the same
parties for the transfer of the further sum of 14,707.30 marks was
made, the agreement being to cause the marks to be paid to the
Frankfurter Bank through the house of E. Ladenburg at Frankfurt
instead of the Deutsche Bank at Berlin. In February, 1917,
plaintiff was advised that the transfer of the marks ordered on
December 29, 1916, had been received by the beneficiaries abroad.
In response to an inquiry made on April 9, 1917, as to what had
happened to the transfer of the 20,000 marks, the defendants wrote
plaintiff that while they had no written confirmation from their
correspondents that the two payments of December eighteenth
and December twenty-ninth had been effected, from their experi-
ence they knew that all wireless transfers which they sent to their
correspondents were received, and they had no reason to believe
that this case was an exception. On June 4, 1919, plaintiff wrote
defendants that the first payment did not seem to have reached its
destination, while the second transfer did, and that he would like
the benefit of the difference in exchange if the transfer was not made
at the time he paid in the money. Defendant replied, on June 5,
1919, that as soon as communication with their German corre-
spondents was permitted they would take up the matter with the
plaintiff. On September 19, 1919, plaintiff by letter made demand
on defendants for the return of the money paid, $3,559.01, with
interest from December 18, 1916. In reply to this, under date of
October 16, 1919, defendants wrote that they had no specific
advices as to whether the sum of 20,000 marks transferred by wire-
less was received, and on October 17, 1919, defendants wrote their
correspondent, the Deutsche Bank of Berlin, to cancel the order
for transfer by wireless of 20,000 marks to the Frankfurter Bank
for the account of the Pichler estate. On December 5, 1919, the

defendants received in the mail from Deutsche Bank in Berlin the following statement of their account with said Deutsche Bank, dated December 28, 1916, containing an item showing the payment to the Frankfurter Bank, Frankfurt a/M of 20,000 marks, as directed by defendants on December 18, 1916:

" Berlin, the 28/12 1916
" W.8
" Messrs Ladenburg, Thalmann & Co
" New York
" in account with

Stamp
Received
1 PM Dec-5 '19

" Deutsche Bank, Berlin.
" We are in receipt of your favor of the:
" We confirm our letter of the:

| " We have placed to your: | Debit M | Value | Credit M u.u.r. |
|---|---|---|---|
| " Brought forward from 23/12....393048.90 | | | 648204.36 |
| 145 | | | |
| " Transfer of Messrs Speyer & Company New York............... | | 27/12 | 400000.— |
| " Your cable Dec. 23rd transfer to the credit of Guaranty Trust Co., New York....... | 400000.— | 27/12 | |
| " Your cable Dec. 19th payment to Frankfurter Bank, Frankfurt..................... | 10000.— | 28/12 | |
| " Your cable Dec. 18th | | | |
| " *Payments* | | | |
| " Frankfurter Bank, Frankfurt a/M..................... | 20000.— | 27/12 | |
| " Elisa H. Lampe, Dessau...... | 1593.— | " | |
| Com......... | —.80 | " | |
| " *Your cable Dec. 21st* | | | |
| " *Payments:* | | | |
| " Deutsche Asiatische Bank, Brl.. | 10000.— | 27/12 | |
| " Deutsche Bank, Elberfeld..... | 56000.— | " | |
| " Carried over to............. | 890642.70 | | 1048204.36 |

" Yours truly,
" DEUTSCHE BANK "

On the same day (December 5, 1919) defendants received the following letter from the Deutsche Bank:

" Deutsche Bank
"American Department
" Sx /Schl.
" Communication
to
" Messrs. Ladenburg, Thalmann & Co.
" New York
" BERLIN, *January* 16*th*, 1917.
W.S.
" Re: Your Cable ' Pay Frankfurter Bank, Frankfurt, a/M
M.    20,000.— account Wechsler Nachlass.'

" Our Frankfurt Branch writes us in the above mentioned matter as follows:
' You order us to make payment of M. 20,000—to the Frankfurter Bank here, for account of Wechsler Nachlass, by order of Ladenburg, Thalmann & Co. New York, which order we have executed accordingly.   Today said bank informs us that the beneficiaries are not known to them and asks for more explicit details.'
" We ask you to please let us have your news as soon as possible and remain
" Yours very truly,
" DEUTSCHE BANK."

On January 12, 1920, defendants wrote plaintiff informing him of the nature of the mistake that had been made in the transmission of the wireless message by which " Pichler Nachlass " had been changed by the radio company to " Wechsler Nachlass," and advised plaintiff that they had that day cabled their correspondents " asking them to inform the Frankfurter Bank to credit these funds to Pichler Nachlass, which will thus put the matter in order," and which cablegram defendants did in fact send as represented.   Plaintiff's counsel under date of January 13, 1920, wrote defendants that the adjustment of the matter proposed in defendants' letter of January 12, 1920, was not at all satisfactory or one that he could ratify and approve, and on January 21, 1920, plaintiff wrote defendants ratifying and confirming the statement of his counsel, and made a second demand in this letter for the return of his money with interest.   Meantime, on January 16, 1920, defendants had received another letter from the Deutsche Bank, as follows:

First Department, July, 1926.          [Vol. 217

Stamp

" Deutsche Bank       Received

8A            Jan 16 '20

"AMERICAN DEPARTMENT                        M
Du /N.

" BERLIN, *December* 18*th* 1919

" Messrs. LADENBURG, THALMANN & Co.
" New York

" Re: Radio-Order for the payment of M 20,000.— to Frankfurter
Bank, Frankfurt, in favor of Eduard Pichler Nachlass

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| * | * | * | * | * | * |
| * | * | * | * | * | * |
| * | * | * | * | * | * |
| * | * | * | * | * | * |

" We wish to add thereto, that the execution at that time was
caused by the mutilated transmission of the radio-message. We
ask you therefore to kindly inform us if we may authorize the
Frankfurter Bank to transfer the amount now to the account of
" Pichler-Nachlass
" Very truly yours
" DEUTSCHE BANK "

On July 26, 1920, the Deutsche Bank wrote defendants that it
had instructed the Frankfurter Bank at Frankfurt to use the 20,000
marks for the account of Pichler Nachlass instead of Wechsler
Nachlass. On August 23, 1920, defendants received from the Frank-
furter Bank a letter dated August 3, 1920, in the German language,
referring to the transaction which is the subject-matter of this
suit, which letter, in part, read as follows: " We ask you kindly to
inform us if the amount is intended for the account of Eduard
Pichler Nachlass, or to give us further more explicit information; "
and on August 26, 1920, and again on September 14, 1920, Laden-
burg, Thalmann & Co. wrote plaintiff setting forth this letter of
the Frankfurter Bank and asking for the necessary information in
order to enable them to reply to the letter, to which plaintiff's
attorney replied on October 7, 1920, that the plaintiff would not
change his original position.

It further appears that on November 8, 1920, the Frankfurter
Bank advised plaintiff by letter dated that day, in response to an
inquiry made through Mr. Gustav Holz, giving a history of the
attempted transfer of 20,000 marks and stating that the bank
had now credited the account of Edward Pichler Nachlass with
20,000 marks, plus interest from December 29, 1916, to November

5, 1920, at one and one-half per cent. On December 1, 1920, plaintiff wrote the Frankfurter Bank acknowledging receipt of their letter dated November 8, 1920, and objecting to their making a credit entry to the account of Edward Pichler Nachlass of 20,000 marks, plus interest inclusive of November 5, 1920, as he had not asked them to do so, and requesting defendants to correct this entry on their books. On December 21, 1920, the Frankfurter Bank wrote plaintiff by letter dated that day, acknowledging his letter of December 1, 1920, and advising that the remittance intended for the account of the Pichler Estate had been credited in that account, and that the bank was unable to change this entry without authorization from the estate executors. And on January 8, 1921, the Frankfurter Bank wrote plaintiff and Mrs. Emma Pichler, widow, advising that 20,000 marks, plus interest, had been transferred from the Pichler Estate account to a miscellaneous account subject to the disposition of plaintiff. On January 12, 1921, plaintiff wrote the Frankfurter Bank acknowledging their letter of December 21, 1920, and stating that he had notified the executors of the Edward Pichler Estate to request that the 20,000 marks be placed in a special account awaiting settlement of the pending dispute. Under date of January 28, 1921, the Frankfurter Bank acknowledged plaintiff's letter of January 12, 1921, and advised him that the 20,000 marks and interest, totalling 21,155 marks, had been transferred from the Pichler Estate account and placed to the credit of a special account (miscellaneous) subject to his disposition. Plaintiff acknowledged the letter of January twenty-eighth from the Frankfurter Bank to him, by letter dated February 23, 1921, noting the transfer of the 21,155 marks into an escrow account pending the settlement of this dispute. July 22, 1921, the Frankfurter Bank sent plaintiff a bank statement showing the transfer on November 5, 1920, of 21,155 marks from the Pichler Estate account to a suspense or miscellaneous account entitled in the name of Edward Pichler, and in August, 1921, plaintiff returned the memo. sent with the bank statement with a notation as follows:

" The following notation was written by the plaintiff in ink in longhand on the memorandum receipts signed by him and returned to the Frankfurter Bank acknowledging the original statements of the escrow account sent by the Frankfurter Bank to the plaintiff and dated respectively July 22, 1921, February 13, 1922, August 14, 1922, and April 6, 1923: ' While the above amounts agree with my books, same cannot be accepted until the pending dispute has been settled.'

" C. EDWARD PICHLER."

I do not see on what theory defendants can be held to any liability upon the foregoing facts, nor any justification therein for plaintiff's attempted rescission of the contract between them. The contract required defendants to transfer 20,000 marks by wireless to the Frankfurter Bank at Frankfurt through the Deutsche Bank at Berlin, the money to be placed to the account of Pichler Nachlass (or Estate). The defendants duly complied with their obligation and by wireless directed the Deutsche Bank to transfer to the Frankfurter Bank 20,000 marks, to be placed to the credit of Pichler Nachlass. The sum of 20,000 marks was in compliance with the wireless message transferred to the Frankfurter Bank, but instead of being placed to the credit of the account of Pichler Nachlass, which would have absolutely discharged defendants' obligation under the contract, it was in fact placed to the credit of Wechsler Nachlass. But this mistake was due to no default of defendants, but to the error in transmission of defendants' wireless message by the radio company, which substituted the name "Wechsler" for "Pichler," and which error was the sole cause of the confusion which resulted and of the failure to properly carry out defendants' instructions by the Deutsche Bank. The requisite transfer of funds was in fact made and the 20,000 marks were in fact transferred to the Frankfurter Bank, but for the account of the wrong Nachlass (or Estate). But that mistake was not the fault of the defendants but of the company transmitting the wireless message, and by plaintiff's contract with defendants, the latter were not to be held liable for any loss or damage sustained in consequence of any mistake in transmitting their message. Defendants in good faith carried out their contract and had no reason to doubt the transaction had been carried through according to their instructions. It was impossible for them to get into communication with their German correspondents until on December 5, 1919, they received the letter of the Deutsche Bank, dated January 16, 1917, which was their first official notice that an error had been made in transmission of their wireless meassage. The statement of the Deutsche Bank, received by them on the same day, though dated December 28, 1916, showed that the 20,000 marks had in fact been transmitted by the Deutsche Bank to the Frankfurter Bank.

The record shows that all wireless communications with Germany ceased on March 20, 1917, by order of the United States government. There is no suggestion that the delay of nearly three years in defendants' receipt of the Deutsche Bank's letter of January 16, 1917, was due to any default on defendants' part, or that they had any reason before communication was suspended with Germany to suspect that their wireless instructions to that

bank had not been duly carried out. Nor is there any suggestion that there was any way by which they could legitimately have communicated with Germany after that date.

This case bears no resemblance whatever to the cases where the funds required to be transferred by wireless or cable were not in fact so transferred, and where the bankers in this country made no effort to carry out their contracts of transfer, or did not actually transfer the money abroad. In this case defendants in perfect good faith attempted to carry out their contract, did what they could to perform, caused the money in fact to be transferred, and only failed of full performance because of the error of the wireless company transmitting the message, for whose error it was expressly agreed they should not be liable.

Respondent relies on the case of *Safian v. Irving National Bank* (202 App. Div. 459; affd., without opinion, 236 N. Y. 513). In that case the plaintiff had bought from the defendant a cable transfer through Commerzbank in Warsaw in favor of Moszek Zelik Safian who lived in the village of Makow; the defendant cabled to its correspondent in Warsaw directing it to make payment to Moszek Zelik Safian, at Makow, which is an interior town in Poland. To make that payment it was necessary to transmit by mail a postal order to the address at Makow, as there was apparently no bank through which payment could be directed. The payee was notified by the plaintiff of his transmission of the funds, and called upon the postal authorities for the postal order. Through some mistake, however, the postal order was made out in form to Moszek Zelik, and the postal authorities refused to deliver the postal order to Moszek Zelik Safian, to whom the moneys were to be paid. Upon learning of this fact the plaintiff demanded back his money and upon the refusal of the defendant to pay back the same brought suit in the Municipal Court. The action in the Municipal Court was " Breach of contract, moneys had and received, negligence." Judgment was entered in favor of the plaintiff and upon appeal to the Appellate Term the judgment was affirmed. (See 115 Misc. 387; affd., 116 id. 647.) This court likewise affirmed the judgment, holding that the case was simply a breach of the express contract on the part of the defendant, by its failure to perform. But in that case the negligence which caused failure of performance was that of the Warsaw bank, which was the agent of the defendant and for whose negligence it was clearly liable; and not as in the present case that of the transmitter of the wireless message from liability for whose negligence defendants were expressly released.

It follows that the judgment appealed from should be reversed,

with costs to the appellants, and a verdict directed in favor of defendants and judgment entered in their favor, with costs.

Clarke, P. J., Finch, McAvoy and Martin, JJ., concur.

Judgment reversed, with costs, a verdict directed in favor of the defendants, and judgment ordered to be entered thereon, with costs.